IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:06-CV-248-FL

| | |
|---|---|
| CHARLES MATTHEWSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on plaintiff's objections (DE #22) to the memorandum and recommendation ("M&R") (DE #19) issued by United States Magistrate Judge William A. Webb. In the M&R, Magistrate Judge Webb recommended that defendant's motion for judgment on the pleadings be granted and that plaintiff's motion for judgment on the pleadings be denied. For the following reasons, the court hereby adopts Magistrate Judge Webb's M&R and GRANTS defendant's motion for judgment on the pleadings.

## BACKGROUND

The factual history of this case is thoroughly recounted in Magistrate Judge Webb's M&R. For purposes of this opinion, the court will provide only a brief overview.

Plaintiff sustained back and neck injuries in a motor vehicle accident on April 18, 2000. Tr. at 190. Plaintiff applied for Disability Insurance Benefits ("DIB") on October 31, 2002, alleging that he "became unable to work"on the date of the accident. Tr. at 74. Plaintiff's application was denied on March 7, 2003, Tr. at 51, and plaintiff's subsequent request for review was denied on June 13,

2003. Tr. at 56. On appeal, a hearing was held before an Administrative Law Judge ("ALJ"), who found that plaintiff was not disabled during the relevant time period. Tr. at 49. Plaintiff appealed the ALJ's decision, Tr. at 63, and the Appeals Council remanded the case to the ALJ for *de novo* review and additional evidence if "warranted by the expanded record." Tr. at 66. The ALJ held a new hearing and on June 29, 2006 he concluded that the plaintiff "was not under a disability as defined in the Social Security Act[.]" Tr. at 22. The Appeals Council denied plaintiff's request for review of the ALJ's second decision, Tr. at 7, and on November 9, 2006 plaintiff filed the instant action.

## DISCUSSION

The court may "designate a magistrate [magistrate judge] to conduct hearings, including evidentiary hearings, and submit to a judge of the court proposed findings of fact and recommendations for disposition" of a variety of motions, including motions for judgment on the pleadings. 28 U.S.C. § 636(b)(1)(A)-(B). "The magistrate . . . shall file his proposed findings and recommendations . . . with the court[.]" 28 U.S.C. § 636(b)(1)(C). This court is obligated to make *de novo* determinations of those portions of the M&R to which objections have been filed. 28 U.S.C. § 636(b)(1)(C); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

When reviewing a decision of an administrative law judge, the court looks to whether there is substantial evidence to support the findings and whether the law was applied correctly. See 42 U.S.C. § 405(g); Craig v. Chater, 76 F.3d 585, 589 (4th. Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989

2

(4th Cir. 1984) (internal citation omitted); see also Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Ultimately, it is the duty of the administrative law judge reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456. Even if the court disagrees with Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Id. With these principles in mind, the court turns to the objections at hand.

Plaintiff's first objection is a procedural one. Plaintiff contends that he did not consent to the jurisdiction of a magistrate judge in the instant suit and "[t]herefore, plaintiff should be granted the opportunity to have a hearing before the United States District Judge." Objection to the Memorandum and Recommendation of the United States Magistrate Judge, DE #22, at 2. Plaintiff mischaracterizes the nature of the notice form sent to all parties. (DE #7). The "Notice of Availability of a United States Magistrate Judge to Exercise Jurisdiction," requires written consent of all parties prior to trial by magistrate judge only in the event that all proceedings are to be conducted before the magistrate, up to and including judgment. Here, where the magistrate judge's involvement is limited to submission of a non-binding M&R, the court need not obtain consent of any party prior to referring portions of the dispute. See 28 U.S.C. § 636(b)(1)(A)-(C). Plaintiff's first objection, therefore, is expressly overruled.

Plaintiff's second, third, and fourth objections present more substantive arguments. In his second objection, plaintiff contends that substantial evidence does not support the ALJ's determination that plaintiff's treating physician's opinion need not be afforded controlling weight. Here, plaintiff contends that Dr. Dixon, like any other physician, has the capacity to formulate medical opinion on the basis of notes made by other care providers, and that the magistrate judge

3

erred when he differentiated between the terms "sedentary work" and "sedentary duty." In general, plaintiff's first objection questions the weight assigned by the ALJ to various medical opinions.

Patient was followed by a group of several physicians for a period of several years at the Cashie Medical Center in Windsor, South Carolina, and the record contains extensive documentation of regular medical checkups since his accident. See, e.g., Tr. at 370-398. On May 25, 2005, plaintiff's personal physician, Dr. Twanna Dixon, M.D., documented plaintiff's condition in a letter in which she she indicated that: "[b]ecause of [plaintiff's injuries] he is unable to do any significant work secondary to weakness and pain." Tr. at 459. Dr. Dixon proceeded to describe plaintiff's specific limitations including his inability to "stand for any long periods of time" or to "do any pushing, pulling, or fine or gross motor movements with the upper or lower extremities." Dr. Dixon's letter described an individual almost entirely incapacitated. Due to his medication regimen, she noted that "it would not be safe for him to work with any machinery or anything that could cause an accident, via harm to himself or to others." Id.

Dr. Dixon also completed plaintiff's Medical Source Statement of Ability to Do Physical Activities, dated February 24, 2005. In her statement she maintained that plaintiff could lift fewer than ten pounds, and was capable of standing or walking for "less than two hours in an 8-hour workday." Tr. at 519.

In his opinion dated June 29, 2006, the ALJ considered evidence of medical opinion of Dr. Dixon and other physicians, including testimony by "a medical expert, Dr. Helen Cannon" which "establishe[d] that the claimant does not have an impairment which meets or equals in severity a listed impairment, which conclusion is supported by the medical evidence of this record." Tr. at 17. The ALJ arrived at his conclusion after describing the relevant law for determining disability, Tr.

4

at 15-16, and subsequently applying that law to specific medical facts derived from the extensive medical records available. Tr. at 16-17.

In finding that the plaintiff does not suffer from a listed impairment, the ALJ discounted Dr. Dixon's opinion to the contrary. The ALJ noted that restrictions described by Dr. Dixon "are not supported by Dr. Dixon's records as a whole[.]" The court agrees with the ALJ that the record as a whole paints a much less dire picture than that attested to by Dr. Dixon when she filled out the forms necessary to support plaintiff in his disability claim.

The record is replete, for example, with office visit records which recount plaintiff's ability to engage in activities outside the scope of capacity described by Dr. Dixon. After a routine check up on August 28, 2003, for example, Dr. Henson, one of the many Cashie physicians who saw plaintiff on a regular basis, noted that plaintiff "has been doing well since he was last seen." Tr. at 373. "[Plaintiff] has been watching his diet and trying to walk more and as a result has noticed some weight loss. He did start lifting weights, but at times it does aggravate his neck and right shoulder[.]" Id. Dr. Henson discussed with plaintiff the fact that "he experienced more pain and decrease in his activity level temporarily, but currently he is back to his level of activity prior to the [second] accident." Tr. at 374. On March 29, 2004 Dr. Dixon herself noted that plaintiff "continues to be very actively involved in various churches and the community and also participating in some community organizations to help those who are less fortunate than himself." Tr. at 370. On July 9, 2004, Dr. Lisa M. Nocera, yet another of plaintiff's care providers at Cashie, wrote "[t]he patient reports today that he feels he is doing much better." Tr. at 236. Dr. Nocera continued: "[h]e has also cut down on his volunteer work and help with the church, stating that he is trying to concentrate on getting himself better first, before helping others." Tr. at 237. And despite Dr. Dixon's indication

5

that plaintiff cannot safely operate machinery because of the risk to himself and others, Dr. Nocera wrote: "[h]e reports no problems driving as he has had in the past, and no problems with falling asleep during the day as had been a previous problem." Id. In addition, on April 16, 2004, plaintiff reported occasional "leg cramps when he uses his riding lawn mower." Tr. at 244.

The transcripts of plaintiff's two hearings before the ALJ also suggests that plaintiff's ability to engage in productive activity may not be as proscribed as indicated by Dr. Dixon. At the first hearing, held on February 1, 2005, plaintiff described himself as "a minister in training" who attends church "about three times a week." Tr. at 550. Plaintiff has participated as a volunteer with Meals on Wheels. Tr. at 553. And at plaintiff's second hearing, held on May 4, 2006, plaintiff acknowledged that he drives a car. Tr. at 571.

Plaintiff contends, essentially, that the ALJ should have given controlling weight to the disability-related medical opinion documents submitted on plaintiff's behalf by Dr. Dixon. The Fourth Circuit has held otherwise. "Courts typically accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). On the other hand, "[t]he treating physician rule is not absolute. An ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." Id.

Here, substantial evidence supports the ALJ's determination that the record as a whole allows for an estimation of plaintiff's capacity that is much more sanguine than the one made by Dr. Dixon.

Plaintiff's third objection is that substantial evidence does not support the ALJ's finding that plaintiff's testimony was not credible. In support, plaintiff describes his extensive medical conditions and symptoms, contends that he has followed the treatment prescribed by his medical

6

doctors, and argues that "[t]he record is void of evidence that plaintiff was leading more than a sedentary lifestyle." Objection to the Memorandum and Recommendation of the United States Magistrate Judge, DE #22, at 5. Plaintiff also notes the Fourth Circuit standard for "substantial gainful activity" as described in Cornett v. Califano: "[t] he ability to work only a few hours a day or to work only on an intermittent basis is not the ability to engage in 'substantial gainful activity.'" 590 F.2d 91, 94 (4th Cir. 1978).

With respect to plaintiff's credibility, the ALJ acknowledged that plaintiff suffers from a condition "that could reasonably be expected to produce the pain and other symptoms alleged," Tr. at 19, but found that "the claimant's subjective allegations are not considered fully credible." Tr. at 20. In support, the ALJ noted that "[o]n several examinations during the time period in question, the claimant reported he was doing well, with improvement noted in the pain he was experiencing," id., that plaintiff had not been instructed by a physician to "refrain from engaging in normal daily activities," id., and that "[t]he claimant's testimony as to his other activities is also compromised by his own statements in the record." Id. The ALJ highlighted inconsistencies between statements made over the years by plaintiff, to his care providers, and plaintiff's testimony at two disability hearings. Id.

For example, in the "Plan of Treatment" agreement form signed in April, 2004 by the physician in charge of plaintiff's pain management regimen and by plaintiff's physical therapist, notes document that:

> Patient . . . runs an independent business out of the home. Patient states his work is that of a missionary. Says he spends much time delivering Meals on Wheels and also volunteering at the school. Says he just purchased a treadmill. He also works out with theraband and performs other land-based exercises from past PT sessions. States he has a home gym that he uses as well. He walks intermittently at the school

7

track and has stated he can walk 8 laps at times. He also uses a cane at times. He
reports he has begun a small lawnmower business but does not do any lifting as he
has a pulley system to lift the mowers. Many of his other tools, etc., are on wheels

Tr. at 249.

The next month's physical therapy report contained similar information:

Patient reports he is doing well in the pool and feels he knows his pool exercises.
Continues with his same routine of daily household cleaning, laundry, shopping, etc.,
as his wife works full time. Has now begun to walk on the treadmill at home 30
minutes daily. Working out with free weights and using his gym set on a regular
basis per his report. Patient has remained active with his community involvement
and delivers "Meals on Wheels" and works as a mentor in the school system. Also
works sporadically at flea markets as he has his own booth; states he sets up/takes
down slowly so as not to increase his back pain.

Tr. at 247.

Nonetheless, at his most recent hearing, plaintiff denied being able to walk more than "a quarter of a mile," Tr. at 580, doing any household chores, Tr. at 583, or doing any work at a flea market. Tr. at 584. Plaintiff also indicated that, although he had owned a lawnmower business "years ago," he no longer performs such work now. Tr. at 583.

"Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Given the inconsistencies between plaintiff's testimony and the written notes of health care providers entered into the record, this court finds that there is substantial evidence to support the ALJ's credibility determination regarding plaintiff's testimony.

As for plaintiff's secondary allegation that plaintiff's level of activity does not permit "gainful employment," the ALJ determined that plaintiff, despite being unable to perform his past

8

relevant work, had the capacity to adjust successfully to new employment. Tr. at 22. Enlisting the help of a vocational expert, the ALJ found plaintiff capable of performing "the requirements of representative occupations such as an office helper, . . . a mail sorter, . . . and a parking lot attendant." Tr. at 21. All three of the representative occupations "exist[] in significant numbers in the national economy." Id. Plaintiff makes no attempt to discredit the vocational expert's reasoning or testimony except to attack the ALJ's input into the vocational expert's understanding of plaintiff's limitations. As discussed further below, the court finds reason to question neither the testimony of the vocational expert nor the reasoning of the ALJ. Therefore, the court finds that the ALJ's determination with respect to plaintiff's capacity to obtain gainful employment is supported by substantial evidence.

In his fourth objection, plaintiff contends that substantial evidence does not exist to support the ALJ's determination that plaintiff could perform other jobs that exist in the national economy. Here, plaintiff argues that the hypothetical posed by the ALJ to the vocational expert, which resulted in a finding that plaintiff <u>could</u> successfully adjust to other work, was flawed because it did not include evidence of all of plaintiff's impairments. Plaintiff essentially reiterates argument from his second objection, suggesting that the ALJ improperly disregarded the medical opinion of plaintiff's treating physicians.

For the reasons stated in discussion of objection two, the court finds that the ALJ properly weighed and evaluated all medical evidence available in the record. Plaintiff's argument that such information was incorrect when presented to the vocational expert is therefore moot. Information

9

provided by the ALJ was properly considered by the vocational expert and resulted in a vocational evaluation supported by the substantial evidence described in response to plaintiff's objection three, above.

## CONCLUSION

After careful review of the record in this case, the court finds that the law and substantial evidence supports the ALJ's determination that plaintiff is not disabled within the meaning of the Social Security Act. Accordingly, the court hereby ADOPTS the recommendation of Magistrate Judge Webb as its own, and, for the reasons stated except as modified herein, plaintiff's motion for judgment on the pleadings (DE # 10) is DENIED, defendant's motion for judgment on the pleadings (DE # 16) is GRANTED, and the final decision of the Commissioner is UPHELD. The clerk is directed to CLOSE this case.

SO ORDERED this the 18th day of January, 2008.

LOUISE W. FLANAGAN
Chief United States District Judge